IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM B. RYBARCZYK, ) | |
| ) | |
| Plaintiff, ) | Case No. CV06-366-C-EJL |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| CRAIG HOSPITAL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Defendant Craig Hospital moves to dismiss this action for lack of personal jurisdiction and for failure to state a claim. Plaintiff William B. Rybarczyk opposes the Motion to Dismiss. The motion is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

**Background**

On October 13, 1999, Rybarczyk, a part-time employee of D.R. Schnider Construction, suffered injuries rendering him a quadriplegic after falling from the roof of a house he was working on in Lewiston, Idaho. The St. Joseph's Hospital in Lewiston, Idaho, referred Rybarczyk to Craig Hospital, located in the state of Colorado. Rybarczyk traveled to Craig Hospital's medical facilities in Englewood, Colorado, where he was admitted on November 28, 2000.

While he was a patient, Rybarczyk's mother, acting as conservator on his behalf, entered into a contract with Craig Hospital that among other things provided for payment of services rendered. Craig Hospital provided in excess of $300,000 worth of medical services to Rybarczyk while he was hospitalized. Rybarczyk was discharged from Craig Hospital on March 28, 2000, and he returned to Idaho.

After his return to Idaho, Rybarczyk's attorneys contacted Craig Hospital to obtain information for pending workers' compensation actions in Idaho and Washington. Subsequently, Craig Hospital sent to Rybarczyk's attorneys several letters requesting that Rybarczyk and his Idaho attorney sign a Hospital Lien Agreement "for reimbursement of medical and rehabilitation expenses incurred by William Rybarczyk." Eventually, Rybarczyk and his Idaho attorney executed the Hospital Lien Agreement and returned it to Craig Hospital.

Craig Hospital also sent Rybarczyk several itemized hospital bills and a request for a copy of Rybarczyk's Idaho workers' compensation complaint. On September 13, 2005, Craig Hospital received a check for $300,708.41 from the Washington State Department of Labor and Industries as payment on Rybarczyk's Washington workers' compensation claim.

Rybarczyk and his attorneys asked Craig Hospital to forward to them a certain percentage of the $300,708.41 for attorneys' fees and costs. Having not received the requested monies, Rybarczyk filed the present lawsuit against Craig Hospital seeking between 30% and 33% of the proceeds paid to Craig Hospital under several different state law theories. Craig Hospital, in turn, moved to dismiss Rybarczyk's action for failure to state a claim and for lack of personal jurisdiction.

## Discussion

The United States Supreme Court has indicated that a federal district court should normally address the "question of personal jurisdiction, which goes to the court's power to exercise control over the parties" in advance of deciding any motion on the merits of the case. See Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979). Accordingly the Court will first consider Craig Hospital's motion to dismiss for lack of personal jurisdiction.

**I. The Law of Personal Jurisdiction**

As plaintiff, Rybarczyk has the burden to establish the existence of personal jurisdiction against Craig Hospital on the claims asserted in the Complaint. <u>Data Disc, Inc. v. Systems Tech. Assoc.</u>, 557 F.2d 1280, 1289 n. 8 (9th Cir. 1977). To avoid Craig Hospital's Motion to Dismiss, Rybarczyk is "obligated to come forward with facts, by affidavit or otherwise, supporting [a prima facie finding of] personal jurisdiction." <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir.1986); <u>see also</u> <u>Data Disc</u>, 557 F.2d at 1285; <u>Ponderosa Paint Manufacturing, Inc. v. Yack</u>, 870 P.2d 663, 671 (Idaho Ct. App. 1994) (citing <u>Schneider v. Sverdsten Logging, Co.</u>, 657 P.2d 1078, 1082, n. 2 (Idaho 1983). Where, as here, the Motion to Dismiss will be decided solely on written submissions, the facts are accepted as presented by the plaintiff and therefore any factual disputes will be resolved in Rybarczyk's favor. <u>See</u> <u>Lake v. Lake</u>, 817 F.2d 1416, 1420 (9th Cir. 1987).

In this diversity case the Court's power to exercise personal jurisdiction over a non-resident defendant is limited both by the applicable state personal jurisdiction statute (long arm statute) and the Due Process Clause. <u>See</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1360 (9th Cir. 1990) (citing <u>Data Disc</u>, 557 F.2d at 1286)). Idaho's long arm statute provides in pertinent part:

> Acts subjecting person to jurisdiction of courts of state.
>
> Any person, firm company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of this court of this state as to any cause of action arising from the doing of any said acts:
>
> (a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;

Idaho Code § 5-514. However, as the Ninth Circuit has previously recognized, the Idaho Legislature intended, in adopting the long arm statute, to exercise all of the jurisdiction available under the Due Process Clause. <u>See</u> <u>Lake</u>, 817 F.2d at 1420 (citing <u>Doggett v. Electronics Corp. of Am.</u>, 454 P.2d 63, 67 (Idaho 1969)). Thus, the state and federal limits

are co-extensive, and an independent review of whether jurisdiction exists under the long arm clause is unnecessary.  See Data Disc, 557 F.2d at 1286.

Due process requires that in order for a non-resident defendant to be haled into court the defendant must have certain minimum contacts with the forum state such that the traditional notions "'of fair play and substantial justice'" are not offended.  See Sher, 911 F.2d at 1361 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). Additionally, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'"  Sher, 911 F.2d at 1361 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  The focus in a personal jurisdiction determination is primarily on "the relationship among the defendant, the forum, and the litigation."  Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

States may exercise general or specific jurisdiction over non-resident defendants.  See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984). General jurisdiction can be asserted when the defendant's activities in the forum state are "continuous and systematic" or "substantial."  Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 447 (1952).

When specific jurisdiction is asserted, the Ninth Circuit has used a three part test which requires (1) that defendant took some action "whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws," (2) that the claim arose out of defendant's activities in the forum state, and (3) that exercising jurisdiction is reasonable.  Cubbage v. Merchent, 744 F.2d 665, 668 (9th Cir. 1984).  "Each of the three tests must be satisfied to permit a district court to exercise limited personal jurisdiction over a non-resident defendant."  Peterson v. Kennedy, 771 F.2d 1244, 1261 (9th Cir. 1985).

The purposeful availment requirement in the analysis is used to make a qualitative evaluation of the defendant's contacts with the forum state.  See Lake, 817 F.2d at 1421.  The defendant's acts to purposefully avail himself or herself to the benefits and laws of this state

is important because it is presumed that it is not unreasonable to then expect the defendant to submit to litigation in the forum as well. See id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). The second requirement, that the litigation arise out of the defendant's contacts with the forum state, determines how closely connected defendant's actions in the forum state were to the harm that is being alleged. See Lake, 817 F.2d at 1421. While in a case of general jurisdiction, where defendant has had continuous and substantial interaction with the forum state, no relationship between that interaction and the harm is necessary, in a case of specific jurisdiction, where there may have only been a single contact with the forum state, the relationship between that contact and the harm must be very close. See id. (citing International Shoe, 326 U.S. at 318).

The Ninth Circuit provides a number of factors to consider in determining the third factor of reasonableness in an effort to preserve the "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316. These factors include: (1) the extent of defendant's involvement in affairs in the forum state, (2) the burden of the defendant to defend in the forum, (3) the extent of the conflict with the sovereignty of defendant's home state, (4) the forum's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the dispute, (6) the importance of the forum in protecting plaintiff's interest in convenient and effective relief, and (7) the existence of an alternate forum. See Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995) (citing Core-Vent v. Nobel Indus. AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

**II.     Application**

Craig Hospital's medical facilities are all located within the state of Colorado, and it provides no medical services within the state of Idaho. Craig Hospital does not advertise or otherwise solicit business within the state of Idaho. Craig Hospital is not incorporated in Idaho, does not hold any licenses relevant to doing business in Idaho, and has no agent for service of process in Idaho. According to Craig Hospital, its "contact with Idaho consists of occasionally accepting patient referrals from medical facilities within the state of Idaho and billing former patients who reside in Idaho but were treated within the state of Colorado." (Br. in Supp. at 2). None of these facts are contested by Rybarczyk.

As is obvious from the above, there is no evidence that Craig Hospital had continuous or substantial contact with Idaho, and therefore the Court will only address whether specific jurisdiction is appropriate. In this regard, to carry his burden of showing that Craig Hospital purposefully availed itself of the benefits and laws of the state of Idaho, Rybarczyk primarily relies on the fact that Craig Hospital sent to Idaho the Hospital Lien Agreement and that the same was executed in Idaho by Rybarczyk and his Idaho attorney. (See Mem. in Opp. at 6-9).

As Craig Hospital notes, however, when Rybarczyk's mother entered into the contract for admission, on behalf of Rybarczyk, to the Hospital in Colorado, Rybarczyk agreed at that time to "assign and transfer . . . all rights and interest in and to payment or reimbursement for . . . workmen's compensation" to Craig Hospital. (Aff. of Ronald Branish, Ex. A ¶ 6). Thus, the Hospital Lien Agreement arguably was merely an implementation of the contract that was executed in Colorado. But even if viewed as a separate agreement, the entry into a contract in the forum state does not alone establish purposeful availment. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985); Hirsch v. Blue Cross, Blue Shield, 800 F.2d 1474, 1480 n. 3 (9th Cir. 1986). Instead, pertinent factors to be considered include: "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Burger King, 471 U.S. at 479.

Most significant here, the Hospital Lien Agreement was sent to Rybarczyk pursuant to Colorado statute and the lien was perfected under Colorado law. (Reply at 4-5 (citing C.R.S.A. § 38-27-102)). Because Idaho did not provide any protection of the interest identified by the Hospital Lien Agreement, its receipt by Rybarczyk and his attorney in Idaho was a mere "fortuitous" contact with the forum. The Hospital Lien Agreement could have been sent to Rybarczyk in any state and the result would have been the same. That Idaho played no part in the execution of the Hospital Lien Agreement is evident from the fact that the contested funds were paid from the state of Washington to Craig Hospital in Colorado. Idaho was never involved.

This case is similar to the Ninth Circuit decision in McGlinchy v. Shell Chem. Co., 845 F.2d 802 (9th Cir.1988). There the Ninth Circuit articulated four reasons to explain why plaintiff's "execution of the contract in California is insufficient to meet the 'purposefully availing' part of the 'minimum contacts' test." Id. at 816. First, "the substance of the

relationship was formed" outside of California. Id. Second, "the contract makes no reference to California . . . either as [plaintiff's] place of residence or as a forum for dispute settlement." Id. Third, "no authorized agents of [defendant] were alleged to have performed or executed any portion of the contract in California." And fourth, the other alleged acts within California "fail to state a prima facie case." Id.

All four factors from the McGlinchy case require the Court to also conclude that Rybarczyk has failed to make out a prima facie case of purposeful availment. First, the substance of the relationship between Rybarczyk and Craig Hospital was formed in Colorado and not Idaho. Second, the Hospital Lien Agreement does not mention Idaho, was not perfected under Idaho law and is relevant in its effect with respect to a transaction that occurred between the state of Washington and Colorado. Third, no performance or execution of the terms of the Hospital Lien Agreement transpired in Idaho or pursuant to Idaho law. Finally, the other contacts that Rybarczyk cites, specifically the fact that Craig Hospital sent itemized hospital bills to Rybarczyk in Idaho and requested a copy of the Idaho workers' compensation complaint, are insufficient to satisfy the purposeful availment test. See e.g., Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758, 760-61 (9th Cir.1990) (explaining that defendant's mailing of invoices to plaintiff, telephone conversations with plaintiff, and response to plaintiff, do not establish purposeful availment); Peterson, 771 F.2d at 1262 (explaining that "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state").

Having determined that Rybarczyk failed to come forward with facts to make a prima facie showing of purposeful availment, the Court need not consider whether parts two and three of the "minimum contacts" test have been satisfied. McGlinchy, 845 F.2d at 817 & n.10.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that the Defendant's Motion to Dismiss (docket no. 7) is **GRANTED** and that the Plaintiff's Complaint is **DISMISSED** for lack of personal jurisdiction without prejudice to refiling in the appropriate forum.

DATED:  **March 5, 2007**

/s/ Edward J. Lodge
Honorable Edward J. Lodge
U. S. District Judge